UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMILAH M.,[1]

                        Plaintiff,                **DECISION AND ORDER**

v.                                      1:25-cv-259-JJM

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

---

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [6, 9].[2] The parties have consented to my jurisdiction [11]. Having reviewed their submissions [6, 9, 10], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The parties' familiarity with the 1,626-page administrative record [3, 4] is presumed. On January 26, 2018, plaintiff filed an application for disability insurance benefits. Administrative Record [3] at 10. Plaintiff complained of difficulties with her neck, shoulder, back, and knee. Id. at 84-85. Plaintiff's claim was initially denied. Id. at 96.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

On January 28, 2020, an administrative hearing was held, after which the Administrative Law Judge ("ALJ") issued a decision denying plaintiff's claim. Id. at 7. After the Appeals Council declined review (id. at 1), plaintiff appealed to this court. The parties thereafter stipulated to remand, and another hearing was held on April 18, 2023. The ALJ issued another unfavorable decision. Another appeal to this court ensued, and the parties again stipulated to a remand. Id. at 1073.

## A.     The Hearing on Remand

On October 22, 2024, ALJ Paul Georger conducted a new hearing. [4] at 1455-71. Plaintiff was represented by an attorney. Id. At the hearing, plaintiff testified that she had returned to part-time work in December 2019 after an improvement in her condition, but that she still had "[a] lot of limitations with my strength of my dominant hand and arm". Id. at 1461-63.

A vocational expert testified that if a person were restricted to sedentary work, with occasional overhead reaching with the right arm, "less than occasional" handling with the right hand, and certain environmental and postural restrictions, then she would be unable to perform plaintiff's past work as a licensed practical nurse or a medical assistant. Id. at 1464. However, he testified that such a person could perform some "unskilled sedentary work", specifically, the jobs of telephone solicitor (Dictionary of Occupational Titles ("DOT") 299.357-014) and telephone survey worker (DOT 205.367-054). Id. at 1465-67.

The vocational expert explained that the title of "survey worker" was listed in the DOT as light work, but that, at the time the title was last updated in 1981, it included door-to-door survey workers and census takers. Id. at 1467. Telephone survey work, however, was "strictly sedentary" and consisted mostly of reading and using a mouse to click responses. Id. Regarding plaintiff's limitation on handling with her right hand and computer usage, the

-2-

vocational expert testified that "from my experience, . . . adapting to your non-dominant hand with the utilization of a mouse is quite easy to do". Id. at 1468.

**B.      The ALJ's Decision**

On December 27, 2024, ALJ Georger issued a decision denying plaintiff's claim. Id. at 1429-47. He found that plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, status-post bilateral carpal tunnel release surgery; degenerative disc disease of the cervical spine; low back pain; patellar tendinosis of the right knee; tear of the supraspinatus tendon of the right shoulder, status-post surgical repair; and obesity. Id. at 1432.

ALJ Georger determined that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR §404.1567(a) except that she could engage in occasional overhead reaching with her right arm and "less than occasional" handling with her right hand, subject to several environmental limitations and limitation in standing and walking. Id. at 1433-34.

ALJ Georger found that plaintiff was unable to perform past relevant work, but that, based on the vocational expert's testimony, she retained the ability to perform jobs that exist in significant numbers in the national economy. Id. at 1444-47. He recounted the vocational expert's testimony regarding the discrepancy between "survey worker" being listed in the DOT as light exertional work and a telephone survey worker, which performed work at the sedentary level, as well as his opinion that it was "quite easy" for an individual to learn to use a mouse with the non-dominant hand. Id. at 1445.

ALJ Georger found that the vocational expert's testimony in this regard was properly based on his 40 years of experience in vocational rehabilitation, and he accepted his

conclusions as "reliable and accurate". Id. at 1446. Accordingly, ALJ Georger found that plaintiff was not disabled. Id. at 1447.

## ANALYSIS

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

### B.    The DOT and the Vocational Expert's Testimony

Plaintiff argues that remand is required because ALJ Georger failed to identify and resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT). Plaintiff's Memorandum of Law [6-1] at 16-20. Specifically, she

-4-

argues that the explanation regarding why the representative jobs could accommodate plaintiff's restriction to sedentary work and "less than occasional" handling with her right extremity was insufficient to discharge the ALJ's duty to reconcile such conflicts. Id. at 17.

Social Security Ruling ("SSR") 00-4P states that "[i]n making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy". 2000 WL 1898704, *2. Therefore, "[o]ccupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT." Id. "When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict." Id.; see Lockwood v. Commissioner of Social Security, 914 F.3d 87, 92 (2d Cir. 2019) ("the Ruling require[s] the Commissioner to probe this apparent conflict before relying on [the vocational expert's] testimony").

"Neither the DOT nor the [expert] evidence automatically 'trumps' when there is a conflict". SSR 00-4P, 2000 WL 1898704 at *2. "The adjudicator must resolve the conflict by determining if the explanation given by the [expert] is reasonable and provides a basis for relying on the [expert] testimony rather than on the DOT information." Id.

Here, the vocational expert identified two representative jobs which, strictly according to their DOT listings, require greater physical capacity than allowed by ALJ Georger's RFC determination. See [4] at 1465-68. The first, "Telephone Solicitor", is defined as semi-skilled sedentary work requiring "[o]ccasional" handling, which is defined as "up to 1/3 of the time". DOT 299.357-014, 1991 WL 672624. The second, "Survey Worker", is defined as light work and requires "frequent" handling, which is defined as "from 1/3 to 2/3 of the time". DOT 205.367-054, 1991 WL 671725.

At the hearing, the vocational expert testified that the DOT listed the job of survey worker as light work because it included door-to-door survey work, but that modern telephone-based survey work was "strictly sedentary" and consisted mostly of reading and using a mouse to click responses. [4] at 1467. Likewise, while the job of telephone solicitor was listed as semi-skilled work based on the previous need to have some keyboarding ability, due to software improvements, the job was now performed by simply using a mouse. Id. at 1466.

ALJ Georger then inquired whether a limitation to occasional handling with the right hand would conflict with the apparent need for "constant" handling of a computer mouse. Id. at 1467-68. The vocational expert testified that it would not, stating that "in [his] experience . . . adapting to your non-dominant hand with the utilization of a mouse is really quite easy to do". Id. at 1468. He also explained that his testimony diverging from the DOT was based on his experience in vocational rehabilitation. Id.

ALJ Georger recounted the vocational expert's testimony in his decision, noted the conflicts with the DOT, the vocational expert's explanations, and plaintiff's counsel's objections. Id. at 1445-46. He acknowledged his obligation under SSR 00-4p to reconcile any such conflicts. Id. at 1446. Ultimately, he found that the vocational expert's explanations, which were based on 40 years of vocational rehabilitation experience, were reasonable, and that his testimony was reliable and accurate. Id. He accordingly found that plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and was thus not disabled. Id. at 1446-47.

As discussed, a conflict between the vocational expert's testimony and the DOT "triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony". Lockwood, 914 F.3d at 92. The vocational expert is then required to provide some

"explanation . . . as to whether those occupations actually require [the functional capacity at issue]" (id.) and to "provide[] a basis for relying on [her] testimony rather than on the DOT information". SSR 00-4P, 2000 WL 1898704 at *2.

In Lockwood, the Second Circuit held that it was not sufficient for the ALJ to merely inquire whether the vocational expert's opinion "was consistent with [the DOT]", and for the vocational expert to respond that "[i]t is". 914 F.3d at 93. But "[t]hat is far different from what happened here, where the conflict was acknowledged and the expert provided testimony about why he believed that the jobs in question did not require [the functional capacity at issue]." Barbara W. v. Commissioner of Social Security, 2025 WL 276668, *6 (W.D.N.Y. 2025). Indeed, colloquies far less probing than the one conducted here have been approved by the courts. *See* Thomas K. v. Commissioner of Social Security, 2025 WL 484178, *5 (W.D.N.Y. 2025) ("so based on your experience, someone could perform these three jobs with occasional handling the right extremity? A: Yes, your honor"); Barbara W., 2025 WL 276668 at *6; Aracelis N.-B. v. Commissioner of Social Security, 2024 WL 4647610, *5 (W.D.N.Y. 2024); Alisa O. v. Commissioner of Social Security, 2021 WL 3861425, *5 (W.D.N.Y. 2021).

Plaintiff points to some cases in this district that would impose a greater burden of inquiry and explanation. [6-1] at 17; *see* Roderick R. v. Commissioner of Social Security, 2023 WL 3642035, *7 (W.D.N.Y. 2023) (holding that the vocational expert must also explain "how the job can be done by someone with the claimant's limitations"). But even that additional burden is satisfied here, as the vocational expert gave plain and logical explanations as to how these jobs, as they currently exist, could be performed despite plaintiff's handling limitations.

Finally, plaintiff repeats an argument made to ALJ Georger based on SSR 83-14, which suggests that "unskilled sedentary work with an additional loss of bilateral manual

dexterity . . . is significant and, thus, warrants a conclusion of 'Disabled'". 1983 WL 31254; *see* [6-1] at 19. However, the example to which the quoted language refers was eliminated in 2001 due, in part, to its frequent misinterpretation. *See* <u>Fox v. Commissioner of Social Security</u>, 2009 WL 367628, *17 (N.D.N.Y. 2009) (*citing* 66 Fed.Reg. 45,162, 2001 WL 967329). In any event, the SSR merely suggests a framework for evaluating such cases; it does not mandate a finding of disability. *See* <u>id.</u>; SSR 96-6p, 1996 WL 374185, *3-4 ("the mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability").

In summary, "[b]ecause the ALJ meaningfully questioned the VE to resolve the apparent conflict between the RFC and the DOT job descriptions, the ALJ's step-five determination was supported by substantial evidence. Accordingly, remand is not required." <u>Aracelis N.-B.</u>, 2024 WL 4647610 at *6.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [6] is denied.

**SO ORDERED**.

Dated: August 6, 2026

<u>/s/ Jeremiah J. McCarthy</u>
JEREMIAH J. McCARTHY
United States Magistrate Judge
